FRANK E. TUNBERG AND ANOTHER v.
FIRST NATIONAL BANK OF MOORHEAD AND OTHERS.

232 N. W. 2d 813.

August 29, 1975—No. 45431.

*Nilles, Hansen, Selbo, Magill & Davies* and *John Michael Nilles,* for appellants.

*Curtis L. Charlson,* for respondents.

Heard before Rogosheske, Todd, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from an amended judgment of the Clay County District Court entered in favor of plaintiffs, Frank E. Tunberg and Northern State Bank of Thief River Falls. The action was commenced by plaintiffs to recover a pro rata share in bankruptcy pursuant to an agreement among 16 creditor banks to share in the distribution of the assets of the debtor, Western Acceptance Corporation (now known as WAC, Inc.). The court initially dismissed plaintiffs' claim for relief and ordered judgment in favor of defendant First National Bank of Moorhead, but, upon plaintiffs' motion, amended its findings and conclusions and ordered judgment for plaintiffs. We affirm.

Western is a Minnesota corporation engaged in the business of financing automobiles and farm implements, with its principal place of business in Moorhead, Minnesota. The corporation was in need of funds and, on August 1, 1967, negotiated a loan of $10,000 from plaintiff Northern State Bank. To satisfy a requirement of the bank in executing the loan, plaintiff Tunberg, a director of Western since its incorporation in 1958, guaranteed the payment of the loan.

On August 8, 1967, Western entered into a credit agreement with defendant First National Bank and 15 other state or national banks to refinance the amount of $706,500. Defendant First National Bank was appointed as agent for these banks under the agreement. In March 1968 Western filed a petition for corporate reorganization under the Federal Bankruptcy Act. A

second agreement was executed on December 31, 1968, by the banks and the trustee for Western to supplement and amend the first credit agreement. Both contained a substantially identical provision, quoted here from the second one:

"Each Bank shall be equally and ratably secured by the collateral and the provisions of the agreement and each other security instrument or agreement given for the protection of the Banks and shall be entitled to participate pro rata according to the amounts due in all payments made or moneys to be applied in payment of the indebtedness of WAC to the Banks. In the event any of the Banks shall receive any payment or prepayment of any indebtedness of WAC in excess of the amount to which it would be entitled pro rata with respect to its share of the total outstanding indebtedness hereunder at the time of such payment or prepayment, whether the same be voluntary, involuntary, by operation of law, by application or offset of any indebtedness, or by any other means, such recipient which has received such excess payment will purchase for par and accrued interest ratably from the other Banks such amount of indebtedness owing by the Company to the other Banks as shall be necessary to produce the result that after such purchase the participation of all of the Banks in the aggregate amount of all indebtedness owing by the Company to the Banks will be in the same proportion as existed immediately prior to the purported excess payment."

The second agreement also contained the following provision:

"This agreement is subject to the approval of the United States District Court having jurisdiction over the operations of WAC, INC. in proceedings for reorganization under Chapter X of the Bankruptcy Act, and when said agreement is approved by the said Court it shall become binding upon all the respective parties hereto, and their successors and assigns."

On May 9, 1968, defendant David T. DeMars had been appointed trustee for Western in the reorganization proceedings pursuant to Chapter X of the Bankruptcy Act and therefore par-

ticipated in the renegotiati.. of the original credit agreement. The cause of action against defendant DeMars was dismissed before trial and need not be considered.

As stated above, the credit agreements were executed between Western and the 16 banks. Plaintiff Tunberg did not become a party to the agreements. Of the total outstanding indebtedness of Western in the amount of $706,500, the amount of the loan made by plaintiff Northern State Bank was $10,000. Upon demand by Northern, Tunberg as guarantor satisfied the indebtedness in the amount of $11,256.45 on January 26, 1970. The banks' agent, First National Bank, and the trustee, DeMars, had knowledge of the demand prior to satisfaction by Tunberg.

Of the total indebtedness of Western, First National Bank as agent collected $571,819.27. The proportionate share of Northern, pursuant to the agreements, was $8,119.83. It is uncontested that Northern received a greater amount by virtue of the payment by guarantor Tunberg than it would have by the terms of the credit agreements.

Northern has not tendered any of this payment to the agent for pro rata distribution and the agent has not made any pro rata distribution to Tunberg, who claims as assignee of Northern's right, title, and interest pursuant to the credit agreements of August 8, 1967, and December 31, 1968.

In its amended findings, conclusions, and order for judgment, the lower court determined that neither plaintiff had received any payment out of the assets of WAC, Inc.; that the agreements permitted assignment by Northern and provided that the agreements were for the benefit of the assigns of the creditor, i. e., plaintiff Tunberg; that the trustee had notice of the payment by Tunberg before such payment was made; and that had distribution payments been made to plaintiffs by virtue of Northern's original interest as scheduled, they would have received $8,119.83, which with interest from the dates other creditors had received payments amounted to $9,037.46. The court ordered judgment for plaintiffs for that amount and further

ordered that additional assets of WAC which may be obtained are to be distributed to them at a proportionate rate of 1.42 percent of the total amount. The counterclaim of defendant First National Bank to recover $11,256.45 that it contends should have been deposited, pursuant to the credit agreements, for pro rata distribution, was dismissed.

The sole issue on appeal, to be resolved by a construction of the credit agreements, is whether the guarantor, under the facts presented, is entitled to the rights, title, and interest of his assignor, Northern State Bank, thus allowing him a pro rata share in the distribution of the assets of Western.

The agreements with which we are here concerned are facially unambiguous. They clearly purport to provide for the pro rata distribution relied upon by all parties to this action. Defendants cite that portion of both agreements which provides that—

"* * * all payments made or moneys to be applied in payment of the indebtedness of WAC to the Banks * * * whether the same be voluntary, involuntary, by operation of law, by application or offset of any indebtedness, or by any other means * * *,"

to support their theory that payment upon the guaranty by plaintiff Tunberg constitutes a payment of the indebtedness of Western so as to fall within the purview of the credit agreements.

However, a strict reading of the credit agreements is conclusive of the intent of the parties. The agreements indicate the desire of the 16 creditor banks to suspend their rights to full satisfaction of their respective indebtedness in favor of the more certain pooling agreement by which each would get a proportionate share of the entire assets of Western. Provisions of the agreements which require a payment into the general fund of any amount over the assigned proportions are undoubtedly the result of an intent that the assets of Western which were capable of distribution not be decreased by a satisfaction in full of a debt held by one of the parties to the credit agreements.

Clearly the satisfaction of the guaranty by plaintiff Tunberg, an agreement wholly separate and apart from the credit agreement, does not in any manner affect the assets of Western which the credit agreement was meant to cover. There results no reduction in the proportionate shares to be received by any of the creditors. To hold as defendants suggest would merely result in an increase of the distributable assets by an amount equal to the payment by Tunberg in excess of Northern State Bank's pro rata share. In addition, Tunberg, not having been a party to the credit agreements, would be without an avenue of satisfying the claim he acquired by fulfilling his guaranty of the loan.

Such results surely are not within the contemplated or possible scope of the credit agreements. We therefore hold that the lower court correctly concluded that plaintiff Tunberg as assignee of the rights, title, and interest of the Northern State Bank holds those rights to a pro rata share which had been held by Northern and therefore is entitled to payment from the assets of Western to the extent Northern would have been. Further, plaintiff Northern State Bank, by its receipt of full satisfaction of the outstanding loan by the payment of the guarantor, has assigned all rights to plaintiff Tunberg and is entitled to retain the full amount of that satisfaction. Such a decision is wholly consistent with the obvious intent of the credit agreements, for the assets of Western are not affected by the guarantor's payment except for the fact that plaintiff Tunberg is entitled to receive his assignor's share in any future distribution thereof.

The decision of the trial court is therefore affirmed in all respects.

Affirmed.